# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **LARRY JONATHAN COLLINS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-CV-0422-GKF-CDL** |
| | ) | |
| **CHRISTE QUICK, Warden,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

Petitioner Larry Jonathan Collins ("Collins"), an Oklahoma prisoner appearing pro se, seeks federal habeas relief under 28 U.S.C. § 2254, asserting he is in state custody in violation of federal law pursuant to the criminal judgment entered against him in Tulsa County District Court Case No. CF-2018-1317. Dkts. 1, 7. Collins raises thirteen (13) grounds for habeas review. *See* Dkt. 1. The Court has considered Collins's Petition for Writ of Habeas Corpus ("Petition") (Dkt. 1), Brief in Support (Dkt. 7), Respondent's Response in Opposition to Petition for Writ of Habeas Corpus (Dkt. 13), the record of state-court proceedings provided by Respondent (Dkts. 12, 14), Collins's Reply (Dkt. 19), and applicable law. For the reasons discussed below, the Petition is DENIED.

## FACTUAL BACKGROUND

A Tulsa County jury found Collins guilty of first-degree murder (Count A) and two (2) counts of possession of a firearm after former conviction of a felony (Counts B and C) in

---

[1] Collins presently is incarcerated at the Oklahoma State Penitentiary, and Christe Quick is the current warden of that facility. The Court therefore substitutes Christe Quick, Warden, in place of Carrie Bridges as party Respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*. The Clerk of Court shall note on the record this substitution.

September of 2019.  Dkt. 12-11 at 131-33.[2]  The trial court sentenced Collins to life imprisonment on Count A and three (3) years each on Counts B and C.  *Id.* at 161.[3]  The trial court ordered Counts B and C to run concurrently with each other and Count A to run consecutively to counts B and C. *Id.* at 162.

Collins's convictions arise from Troy Smith's ("Smith") death on February 17, 2018.  *See* Dkt. 12-11 at 78.  Around 11:00 p.m. on February 17th, Tulsa police responded to a "possible shooting" at 1400 East Young Street, Tulsa County.  Dkts. 12-6 at 168 and 12-7 at 215.  Upon arriving, Officer Charles Ramsey found Smith's body in the middle of East Young Street.  Dkt. 12-6 at 168; *see also* Dkt. 14 at State's Exs. 2 and 27.  Authorities at the scene observed Smith lying face up, with an abrasion on his forehead and a single bullet wound in the back of his head.  Dkt. 12-6 at 168-69, 177, 194-95; *see also* Dkt. 14 at State's Exs. 2, 3, 21, 22, 23.  Investigators also saw a hole in the hood of the sweatshirt Smith was wearing, as well as in the gray stocking cap he was wearing.  Dkt. 12-6 at 196; *see also* Dkt. 14 at State's Exs. 24, 25, 26.  Each hole was described as a "bullet defect."  Dkt. 12-6 at 196.

The police recovered five (5) bullet casings in the intersection of Young and Quincy.  Dkts. 12-6 at 183 and 12-7 at 43; Dkt. 14 at State's Exs. 10, 16-20, 27.  All five (5) casings were aluminum 9mm Luger with an NFCR headstamp.  Dkts. 12-6 at 187-88 and 12-7 at 13, 18. Forensic analysis revealed the five (5) casings were fired from the same gun.  Dkt. 12-7 at 133.

---

[2]  The Court's citations refer to CM/ECF header pagination.

[3]  Collins was originally charged with murder in the first degree (Count 1) and possession of a firearm after former conviction of a felony (Count 2).  Dkt. 12-10 at 24.  Subsequently, the charges were amended, and Collins was charged with murder in the first degree (Count 1), possession of a firearm after former conviction of a felony (Count 2), a gang related offense (Count 5), possession of a firearm after former conviction of a felony (Count 6) and kidnapping (Count 7).  *Id.* at 104-05.  Counts 5 and 7 were dismissed pre-trial.  *See* Dkts. 12-4 at 5 and 12-5 at 3.  Collins proceeded to trial on Counts 1, 2 and 6.  *See* Dkt. 12-5 at 3.  The trial court labeled these charges Counts A, B and C for purposes of deliberations.  *See* Dkt. 12-11 at 129-134.

Surveillance footage from the nearby Town Square Apartments showed Smith standing on the driver's side of a Chevy Trax interacting with the driver at 10:51:05 p.m.  Dkt. 12-7 at 23, 27, 176-77, 202-03.  At 10:53 p.m., there is video footage of Smith walking towards the exit of the Town Square Apartments.  *Id.* at 203.  The Chevy Trax left at 10:54 p.m.  *Id.* at 28, 203.  Police determined the vehicle was a dark-colored maroon Chevy Trax.  *Id.* at 181.

On February 20, 2018, Tulsa police observed a vehicle matching the description of the Chevy Trax from February 17th.  *Id.*  Officer Robert David ("David") activated his lights and sirens to stop the Chevy Trax after it "rolled a stop sign."  *Id.* at 30-31.  The vehicle did not stop, and a pursuit ensued.  *Id.* at 31, 72.  At one point during the pursuit, while the Chevy Trax crossed over a bridge, David observed "a metallic object … thrown out of the passenger side of the vehicle."  *Id.* at 32-33.  The Chevy Trax eventually stopped, and the passenger exited and ran.  *Id.* at 34-35, 37.  Authorities apprehended the passenger, William Johnson ("Johnson").  *Id.* at 38, 72, 74.  The driver was arrested and identified as Collins.  *Id.* at 38.

A .40-caliber pistol magazine containing 9mm Luger ammunition with an NFCR headstamp was recovered from the trunk of the Chevy Trax.  *Id.* at 45-47.  The police also returned to the bridge where David saw the metallic object thrown and recovered a .40-caliber Smith and Wesson pistol loaded with .40-caliber ammunition with an NFCR headstamp.  Dkt. 12-6 at 203-06.  The police identified Beatrice Brown ("Brown"), Collins's girlfriend, as the owner of the Chevy Trax.  *See id.* at 219; Dkt. 12-7 at 10, 67.

Brown confirmed Collins "sometimes" stayed with her at her apartment and she permitted Collins to borrow her Chevy Trax.  Dkt. 12-6 at 218-20.  Brown also confirmed Collins used her Chevy Trax on February 17, 2018, and returned around midnight that night.  *Id.* at 219-20.  Brown viewed the surveillance footage from February 17th and identified her Chevy Trax as the vehicle

Smith stood next to in the parking lot. *Id.* at 223-24. Brown also informed authorities she owned two (2) guns, a 9mm SCCY and a .40-caliber Smith and Wesson. *Id.* at 218, 240-41. Brown could not account for either gun's location and stated both had "disappeared at some point[.]" *Id.* at 241. Brown confirmed the .40-caliber Smith and Wesson recovered from near the bridge was one (1) of her two (2) guns. *Id.* at 219; *see also* Dkt. 14 at State's Ex. 30. Police also searched Brown's apartment. Dkt. 12-7 at 10-11. Police found a box of aluminum 9mm Luger ammunition with the headstamp NFCR. *Id.* at 11-13. Some of the cartridges had been removed from the box. *Id.* at 13.

While detained, Collins and Brown communicated via phone calls and video calls. Dkt. 12-6 at 226-27, 232; *see also* Dkt. 14 at State's Exs. 34A, 34B-1, 34B-2. Collins made the following statements to Brown:

> You know what me and Man-Man[4] was supposed to did. I never got a chance to. We was kind of on our way to do that shit. We was at the Square when we got pulled over. It's put up, but where it's at, I don't know. I really don't want to say on the damn phone.

Dkt. 14 at State's Ex. 34B-1, Item 55.

> Brown: Get you out to do what?

> Collins: … What I told you I needed to go do. What I was supposed to be doing that night. … I have to get out to handle my business cause where it's at is not a safe spot. With all this rain and shit, I don't know ….

*Id.* Collins also told Brown, "you gonna have to get me out anyways. I got to get rid of that. You know that …" *Id.*

---

[4] Johnson's nickname is "Man-Man." Dkt. 12-6 at 218.

On a video call, Collins stated to Brown, "I am sitting here telling you that fucking thing is lying over there on Booker T. property."  Dkt. 14 at State's Ex. 34B-2, Item 56.  Also, during a video call with Brown, Collins stated:

> Collins:  I feel like I got some type of mission in life.  You know.
>
> Brown:  I hope you get to it and stop playing.
>
> Collins:  I feel, sometimes I feel like my mission in life is to clean up the streets from the most fucked-up-est n*gg*rs, I'm supposed to kill them all.  Sometimes I really feel like that.

Dkt. 14 at State's Ex. 34B-2, Item 67.[5]

Concerning Collins's statement, "it's not in a safe spot," Brown understood Collins to be referring to the gun.  Dkt. 12-6 at 233.  When Collins referred to "that fucking thing," Brown understood him to be referencing the gun.  Dkt. 12-6 at 235.  The murder weapon was never recovered.  Dkt. 12-7 at 184-85.  After Smith's death, Collins viewed eleven (11) articles and/or websites referencing Smith's murder on his cellphone.  *Id.* at 196-97.

Johnson, Collins's passenger, testified he and Collins were together in a Chevy Trax at the Town Square Apartments on February 17, 2018.  *Id.* at 66-67.  The vehicle belonged to Collins's girlfriend.  *Id.* at 67.  Collins was driving, and Johnson was the passenger.  *Id.*  While they were parked in the parking lot, Smith approached the driver's side of the car and asked for a ride.  *Id.* at 68.  Collins refused the request and told Smith to take his hand out of his pocket and stop "clutching," which meant "grabbing on something like a gun[.]"  *Id.* at 68-69.  During the encounter, Collins "kept reaching his hand like up underneath the dashboard of his steering wheel," where Johnson knew Collins stashed a gun.  *Id.* at 69-70.  Johnson testified, "[e]very time prior to

---

[5] Also, the morning of Smith's murder, Collins sent a text message to an unknown number stating, "I'm on missions all day."  Dkt. 12-7 at 197.

that date that he was with me he had a gun up under that damn console." *Id.* at 109.  Johnson did not see Smith "clutching" nor Collins display a gun during the encounter.  *Id.* at 70, 97.  After Smith walked away, Collins and Johnson left the apartment complex, and Collins dropped Johnson off at the casino.  *Id.* at 70-71.  This was "like eleven o'clock or something like that." *Id.* at 71.  Johnson testified he did not kill Smith.  *Id.* at 78.  Johnson testified during the pursuit on February 20th, Collins threw a gun in his lap, Johnson "threw it back in [Collins's] lap," and Collins "took it and threw it out the window." *Id.* at 72-73.  Johnson testified the gun that was recovered by authorities was the gun Collins threw in his lap and ultimately threw out the window.  *See id.*; *see also* State's Ex. 30.

Johnson and Collins had a verbal altercation at the Tulsa County Jail after they were both arrested.  Dkt. 12-7 at 75-76.  They were in "medical" when Collins approached Johnson and accused him of "snitching to the police." *Id.* at 76.  Collins "told [Johnson] that he was going to have [his] family killed" because Johnson had been "talking to the police that he had a committed murder charge or something [sic]." *Id.*

After his conviction, Collins filed a direct appeal, and the Oklahoma Court of Criminal Appeals ("OCCA") upheld his convictions and sentences.  Dkts. 13-1, 13-2.  Collins then filed an Application for Post-Conviction Relief ("Application").  Dkt. 13-4.  The district court denied the Application.  Dkt. 13-6.  Collins filed a Petition in Error challenging the district court's adjudication of his Application.  Dkt. 13-7.  The OCCA affirmed the district court's denial of the Application on August 9, 2022.  Dkt. 13-9.  Collins then petitioned this Court for habeas relief on September 29, 2022.  Dkt. 1.

## DISCUSSION

### I.    Legal Standards

A federal court has discretion to grant federal habeas relief to a prisoner who is in state custody pursuant to a final criminal judgment if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").  But the federal habeas statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and as interpreted by the United States Supreme Court, significantly limit a federal court's discretion to grant habeas relief to a state prisoner.

#### A.  Exhausted Claims

"A state prisoner generally must exhaust available state-court remedies before a federal court can consider a habeas corpus petition."  *Bland v. Sirmons,* 459 F.3d 999, 1011 (10th Cir. 2006); *see* 28 U.S.C. § 2254(b)(1)(A).  When a state prisoner fairly presents a federal claim in state court and the state court adjudicates that claim on the merits, a federal court cannot grant habeas relief as to that claim unless the prisoner first shows the state court's decision as to that claim either (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Douglas v. Workman*, 560 F.3d 1156, 1170 (10th Cir. 2009) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated by "the holdings" of the Supreme Court's "decisions as of the time of the relevant state-court decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting

*Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  Thus, when § 2254(d)(1)'s framework informs a federal court's analysis, the first question for the court is whether the petitioner's claim rests on law that was clearly established by Supreme Court precedent at the time of the relevant state-court decision.  *House v. Hatch*, 527 F.3d 1010, 1015-18 (10th Cir. 2008).  If such law exists, and the state court has correctly identified that law, the only question under § 2254(d)(1) is "whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'"  *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Williams*, 529 U.S. at 413).  To establish the state court's decision unreasonably applied the law, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  In other words, "a petitioner must persuade a federal court that no 'fairminded juris[t]' could reach the state court's conclusion under [the Supreme] Court's precedents."  *Brown v. Davenport*, 596 U.S. 118, 135 (2022) (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)).

Under § 2254(d)(2), a petitioner must show the state court's decision rests on an unreasonable determination of the facts.  But "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  Instead, the reasonableness of a state court's factual determination also is measured by *Richter*'s fairminded-disagreement standard.  *Dunn v. Madison*, 583 U.S. 10, 13-14 (2017).  And "if [*Richter's*] rule means anything, it is that a federal court must carefully consider all the reasons and evidence supporting the state court's decision" and the federal court may not disturb the state court's decision "without identifying—let alone rebutting—all of the justifications" that may support that decision.  *Mays v.*

*Hines*, 592 U.S. 385, 391-92 (2021) (per curiam).  In addition, when § 2254(d) applies, the federal court's review is limited to the same record that was presented in state court unless and until the petitioner satisfies § 2254(d)'s demanding preconditions to relief, *Pinholster*, 563 U.S. at 185, and the federal court must presume the correctness of any state-court factual findings unless the petitioner presents clear and convincing evidence to rebut that presumption, 28 U.S.C. § 2254(e)(1).

If a petitioner satisfies § 2254(d)'s preconditions to relief, the federal court may then review the petitioner's federal claim *de novo*.  *Milton v. Miller*, 744 F.3d 660, 670-71 (10th Cir. 2014).  But, even on *de novo* review, a federal court must apply § 2254(e)(1)'s presumption of correctness to any state-court factual findings relevant to the federal claim.  *Sumpter v. Kansas*, 61 F.4th 729, 750 (10th Cir. 2023).  Moreover, even if the federal court determines that a constitutional error occurred, the court may not grant federal habeas relief unless the petitioner also "show[s] that the error had a '"substantial and injurious effect or influence"' on the outcome of his trial."  *Davenport*, 596 U.S. at 126 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

### B.  Defaulted Claims

Under the doctrine of procedural default, federal courts are precluded from "consider[ing] issues on habeas review that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice."  *McCracken v. Gibson*, 268 F.3d 970, 976 (10th Cir. 2001) (internal quotations omitted).  "To be independent, the procedural ground must be based solely on state law."  *Cole v. Trammell*, 755 F.3d 1142, 1159 (10th Cir. 2014) (internal quotations omitted).  To be adequate, a state procedural ground "must be strictly or regularly followed and applied evenhandedly to all similar claims."  *Id.* (internal quotations omitted).  Where, as here, the state

has pleaded the affirmative defense of a state procedural bar, "the burden to place that defense in issue shifts to the petitioner," who must, at a minimum, provide "specific allegations . . . as to the inadequacy of the state procedure." *Hooks v. Ward*, 184 F.3d 1206, 1217 (10th Cir. 1999).

Applying these legal standards, the Court turns to Collins's claims.[6]

## II.    Grounds 1 and 2:  Insufficient Evidence

Collins first asserts "there was insufficient evidence to convict [him] of First Degree Murder." Dkt. 1 at 5.  Collins does not elaborate further.  *See id.*, *see also* Dkt. 7.  The Court assumes Collins is relying on the same arguments advanced by his appellate counsel on direct appeal.  *See* Dkt. 13-2 at 16-22.  On direct appeal, Collins argued "[t]he trial evidence does not prove beyond a reasonable doubt that Mr. Collins was the person who fired the shots, that he was present when the shots were fired, or that he was involved in the shooting of Mr. Smith in any way." Dkt. 13-2 at 18.  Further, "the State failed to demonstrate that Mr. Collins formed the requisite specific intent to kill."  Dkt. 13-2 at 21.  Collins also alleges the evidence at trial was insufficient to convict him of the unlawful possession of a firearm charge, as alleged in Count B, because the murder weapon was never recovered.  Dkts. 1 at 7 and 7 at 1.  Collins presented this contention to the OCCA on direct appeal.  Dkt. 13-2 at 22-24.

### A.  The OCCA Decision

On direct appeal, the OCCA considered Collins's Ground 1 claim and concluded:

> The strong circumstantial evidence sufficiently proved Collins's guilt.  His associate, William Johnson, and apartment complex surveillance video placed him near the murder scene talking with the victim minutes before the murder.  Johnson explained a possible motive when he testified that Collins refused to give the victim

---

[6]  To the extent Collins asks this Court to conduct an evidentiary hearing (*see* Dkt. 7 at 8), Collins has not demonstrated, as to any claim, that he can satisfy § 2254(d)'s preconditions to habeas relief. And Collins does not argue, much less demonstrate, that he can make the showings necessary to obtain an evidentiary hearing under § 2254(e)(2).  For these reasons, the Court denies Collins's request for an evidentiary hearing.

a ride because he believed the victim had a gun in his pocket. Collins's statement to his girlfriend – that he wanted to clean up the streets by shooting people – and his text messages the day of the murder supported a finding of malice aforethought. The consistency of the casings found at the murder scene and other cartridges found in a gun Collins tossed from a car window during a police pursuit, as well as those found at his home provided further circumstantial proof connecting him to the murder. His cell phone Web searches for information about the murder as well as his threats to Johnson for "snitching" established consciousness of guilt. Based on this evidence, we hold a rational jury could find the elements of first degree murder beyond a reasonable doubt.

Dkt. 13-1 at 4-5. As to Collins's Ground 2 claim, the OCCA held:

Collins lived with his girlfriend. Both of her guns were missing after the murder and she did not know their whereabouts. Police recovered her .40 caliber pistol. That gun was not the murder weapon, but 9mm casings were found at the murder scene and cartridges with the same casing were recovered from Collins's apartment as well as from the .40 caliber pistol's magazine. During a jail phone call with his girlfriend, Collins referred to what he and Johnson had supposedly done and told her "it's not in a safe spot." She understood "it" was her 9mm handgun. These statements showed Collins's knowledge of the 9mm gun's location. His concern police might find it supports a finding he possessed it when he used it to kill the victim. The evidence, taken as a whole, was sufficient for a rational jury to find he possessed that gun beyond a reasonable doubt. This claim is denied.

Dkt. 13-1 at 5-6.

**B. Analysis**

The Fourteenth Amendment's due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When reviewing the sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). When applying the *Jackson* standard, a federal court first looks to state law to determine the essential elements of the crime and then whether the evidence suffices to establish each element. *Hawes v. Pacheco*, 7 F.4th 1252, 1264 (10th Cir. 2021). In doing so, the federal court, like the jury, may rely on circumstantial evidence. *See United*

*States v. Hill*, 786 F.3d 1254, 1261 (10th Cir. 2015) (explaining the government may rely on circumstantial evidence to meet its burden to prove guilt beyond a reasonable doubt and stating "[c]ircumstantial evidence alone may permissibly support a jury's guilty verdict").

Notably, "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. [...] And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

*Id.* (internal quotations and citations omitted).

To obtain a conviction for murder in the first degree, the state had to prove Collins "unlawfully and with malice aforethought caused the death of another human being." Okla. Stat. tit. 21, § 701.7(A). And, to obtain a conviction for unlawful possession of a firearm, the state had to prove Collins: (1) knowingly and willfully, (2) possessed, (3) a pistol, and (4) Collins was convicted of a particular felony in a particular court on a particular date. Okla. Stat. tit. 21, § 1283.

Applying the *Jackson* standard, the OCCA determined a rational jury could have found, beyond a reasonable doubt, that Collins committed first degree murder and unlawfully possessed a firearm. Dkt. 13-1 at 4-6. Thus, to prevail on these claims, Collins must demonstrate the OCCA unreasonably applied *Jackson* to the facts of Collins's case. *Pinholster*, 563 U.S. at 182.

As to the first-degree murder charge, the evidence presented at trial established Smith was killed by a bullet fired into the back of his head and five (5) spent casings were found in the vicinity of his body. Dkts. 12-6 at 168-69, 177, 134, 194-96 and 12-7 at 43. Apartment surveillance and Johnson's testimony established Collins and Smith interacted in the parking lot of the apartment

complex minutes before Smith was shot. Dkt. 12-7 at 27, 176-77, 202-03. Smith then left the apartment complex on foot, and Collins followed in a vehicle approximately one minute later. *Id.* at 27-28, 177, 203. The shooting occurred about five minutes later. Dkt. 12-7 at 215. Johnson also testified Collins declined to give Smith a ride during the interaction in the parking lot immediately before the shooting and Collins reached for a gun he kept under his steering wheel. *Id.* at 68-69.

Collins's communications before and after the murder establish circumstantial evidence of his guilt. The morning of the murder, Collins sent a text message stating he would be "on missions all day." Dkt. 12-7 at 197. This statement links to Collins's post-murder comment to Brown that he felt his "mission in life is to clean up the streets from the most fucked-up-est" black people and he is "supposed to kill them all[.]" Dkt. 14 at State's Ex. 34B-2, Item 67. Just over one day after the shooting, Collins searched for information about the shooting on the internet using the query "Tulsa's latest homicide Troy." *See id.* at 196. A few days after the murder, Collins eluded police and, during the pursuit, told Johnson he "did a shooting" and Collins threw a gun out the passenger-side window. Dkt. 12-7 at 30-31, 72-73, 75.

Concerning the unlawful possession of a firearm charge, evidence at trial established Collins had access to Brown's 9mm firearm, and Johnson previously witnessed Collins with a 9mm gun. Dkts. 12-6 at 218 and 12-7 at 106. The murder weapon was never recovered (Dkt. 12-7 at 184-85) and Brown testified she did not know where her 9mm gun was. *See* Dkt. 12-6 at 222, 241. Collins's phone calls from jail insinuated he knew the location of the gun and was concerned it would be found by authorities. Dkt. 14 at State's Ex. 24B-1. Lastly, 9mm casings with an NFCR headstamp were found at the scene of the shooting, in the trunk of the vehicle Collins was driving on February 20th, and in Brown's apartment. Dkt. 12-7 at 11-13, 178, 185-86.

Viewing the evidence in the light most favorable to the state, the Court finds a rational juror, properly instructed on the law, could have found Collins guilty, beyond a reasonable doubt, of first-degree murder and unlawful possession of a firearm after former conviction of a felony. Collins was near the scene of the crime, with a firearm and interacted with Smith moments before the murder.  His post-murder conduct of eluding the police and getting in an altercation with Johnson for "snitching" supports the jury's finding that Collins caused Smith's death.  Collins's communications and cell phone searches also support the finding.  Collins's communications prior to the murder and the five (5) spent casings support the jury's finding of malice aforethought.

Additionally, the circumstantial evidence supported the jury's conclusion that Collins had "actual physical custody, or knowledge of the weapon's presence, as well as power and intent to control its use or disposition." *Jones v. State*, 899 P.2d 635, 651 (Okla. Crim. App. 1995); *see also* Instruction No. 6-45, OUJI-CR (2d).  The disappearance of the gun after the shooting, the matching ammunition found in the car Collins was driving and in Brown's apartment and Collins's conversations evincing knowledge of the gun's location and fear of it being found are proof of his possession of the gun.[7]

Collins has not shown the OCCA applied *Jackson* to the facts of the case in an objectively unreasonable manner, or that the OCCA based its decision on an unreasonable determination of the facts presented in state court.  Habeas relief as to Grounds 1 and 2 is denied.

## III.     Ground 3:  Accomplice Jury Instruction

Next, Collins alleges, "[t]he trial court erred by failing to instruct the jury on accomplice testimony in violation of the 14th Amendment."  Dkt. 1 at 8.  On direct appeal, Collins argued:

---

[7] During the second phase of the trial, the jury was informed of Collins's prior felony convictions. *See* Dkt. 12-8 at 85-86; *see also* State's Ex. 47-B.

14

Mr. Johnson was originally charged in this case with Mr. Collins, but those charges were dismissed. … At trial counsel failed to request accomplice instructions and the trial court failed to instruct on the issue. As such, the jury was not instructed that there had to be independent corroborating evidence before the accomplice testimony could be decided. The failure to properly instruct denied Mr. Collins a fundamentally fair and reliable sentence.

Dkt. 13-2 at 25. As recognized on direct appeal, Collins did not request the jury instruction at trial.

Therefore, the OCCA reviewed this claim for plain error and rejected it. Dkt. 13-1 at 6-9.

### A. The OCCA Decision

The OCCA analyzed the issue and held:

There was no evidence Johnson participated in the victim's murder in any way. Contrary to Johnson's claim, he may very well have been present when the victim was shot, but there was no proof he was the shooter or facilitated the shooting by word or deed. Mere presence is not enough to make Johnson an accomplice. *See Wilson v. State*, 1994 OK CR 5, ¶ 13, 871 P.2d 46, 50 (stating "[m]ere presence at a crime scene or knowledge that a crime has been committed is not sufficient to justify a finding that a witness is an accomplice."). This lack of proof was reflected in the State's prosecution decision. Johnson was never charged conjointly with Collins with the crime of first degree murder as there was no evidence he caused or aided the victim's death or intended to kill him. The State charged Johnson only with accessory after the fact to murder, later dropping even that charge. We have repeatedly held that accessory testimony requires no corroboration. *Honeycutt v. State*, 1992 OK CR 36, ¶ 20, 834 P.2d 993, 999. Because there was no evidence Johnson took part in the victim's murder, he could not be indicted with Collins for murder and was not an accomplice. His testimony therefore required no corroboration. Accordingly, an instruction on accomplice testimony was not warranted and the district court did not err in failing to submit one.

Dkt. 13-1 at 8-9.

### B. Analysis

It is well established "[a]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir.1997) (quoting *Long v. Smith*, 663 F.2d 18, 23 (6th Cir.1981)); *see also Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir.1995) ("A state trial conviction may only be set aside in a

15

habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). Collins's "burden in attacking his conviction and sentence based on an erroneous omission of the cautionary jury instruction is a heavy one – 'even greater than the showing required to establish plain error on direct appeal.'" *Foster v. Ward*, 182 F.3d 1177, 1193 (10th Cir. 1999) (quoting *Maes*, 46 F.3d at 984).

There was no evidence presented to the jury of a plan among Collins and Johnson to shoot or kill anyone or that Johnson acted alongside Collins. Additionally, Collins's defense counsel emphasized Johnson's criminal record (including a pending charge) and highlighted for the jury Johnson's prior inconsistent statements. *See e.g.*, Dkt. 12-7 at 80-81, 86-91. Finally, the trial court instructed the jury it was their "responsibility to determine the credibility of each witness and the weight to be given the testimony of each witness." Dkt. 12-11 at 86. The jury was also instructed, "[i]n determining such weight or credibility, you may properly consider: the interest, if any, which the witness may have in the result of the trial; the relation of the witness to the parties; [and] the bias or prejudice of the witness[.]" *Id.*

Considering the record, an accomplice instruction was not warranted, and this Court cannot conclude the absence of such an instruction rendered the trial so fundamentally unfair as to cause a denial of a fair trial. Collins failed to demonstrate the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented at trial. Habeas relief as to Ground 3 is denied.

## IV.    Ground 4:  Ineffective Assistance of Trial Counsel

Building on Ground 3, Collins alleges his trial counsel was ineffective "for not requesting a jury instruction on accomplice testimony."  Dkt. 1 at 10.  This claim was also raised on direct appeal and rejected.  Dkt. 13-1 at 10.

### A.  OCCA Decision

The OCCA held:

> Collins cannot show counsel's failure to request an instruction on accomplice testimony affected the outcome of his trial.  The merit of the alleged deficiency of defense counsel was rejected in Proposition 3 because an accomplice instruction was unwarranted.  Collins cannot show there is a reasonable probability the outcome of his case would have been different had defense counsel requested an accomplice instruction.  Because he cannot show the necessary prejudice to prevail, this claim must be denied.

*Id*.

### B.  Analysis

Under clearly established federal law, the Sixth Amendment guarantees a criminal defendant "the right to the effective assistance of counsel."  *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.  And the framework for assessing any such claim requires a reviewing court to consider (1) whether counsel performed deficiently and, if so, (2) whether counsel's deficient performance prejudiced the defendant.  *Id.* at 687.  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at

694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome*." Id.*

The OCCA correctly identified the *Strickland* principle as governing its inquiry. *See* Dkt. 13-1 at 10. Thus, Collins must establish the OCCA unreasonably applied *Strickland*. *See Upchurch v. Bruce,* 333 F.3d 1158, 1167 (10th Cir. 2003). Collins cannot make the requisite showing. As explained above, Collins's trial was not rendered fundamentally unfair by the absence of the unwarranted accomplice instruction. *See supra.* Therefore, Collins cannot demonstrate his counsel performed deficiently. *Strickland*, 466 U.S. at 687. Nor can he demonstrate he was prejudiced by the lack of accomplice instruction. *Id.* The OCCA's adjudication of Collins's Ground 4 was not contrary to or an unreasonable application of clearly established federal law. Habeas relief as to Ground 4 is denied.

## V.     Ground 5:  Cumulative Error

Next, Collins alleges "cumulative errors deprived [him] of a fair trial." Dkt. 1 at 16. This claim was also presented on direct appeal. Dkt. 13-2 at 29. The OCCA concluded, "[t]here are no errors, considered individually or cumulatively, that merit relief in this case. This claim is denied." Dkt. 13-1 at 11.

Habeas petitioners "are entitled to 'relief under [the] cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness.'" *Andrew v. White*, 62 F.4th 1299, 1351 (10th Cir. 2023) (quoting *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013)), *cert. granted, judgment vacated on other grounds* 145 S. Ct. 75 (2025). To analyze a cumulative-error claim, a reviewing court "aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."

*Simpson v. Carpenter*, 912 F.3d 542, 602 (10th Cir. 2018) (quoting *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002)). But "[o]nly actual constitutional errors are considered when reviewing a case for cumulative error." *Id*. As detailed above and below, Collins has not established the existence of any constitutional errors. Therefore, no reasonable jurist could conclude the OCCA's rejection of Ground 5 was contrary to or an unreasonable application of clearly established federal law. *See Wyatt v. Crow*, 812 F. App'x 764, 770 (10th Cir. 2020).[8] Nor has Collins demonstrated the OCCA's decision rested on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Habeas relief as to Ground 5 is denied.

## VI.    Ground 12: Ineffective Assistance of Appellate Counsel

Concerning Ground 12, Collins alleges:

Ineffective assistance of appellate counsel for not raising the following arguments/issues on direct appeal: (1) the state and prosecutor knowingly allowed perjured testimony of state's witness William Johnson, (2) trial court's failure to inquire into an actual conflict of interest, (3) violation of confrontation clause for not being able to cross examine medical examiner Dr. Arboe, (4) allowing evidence of other crimes, (5) failure to properly instruct the jury on circumstantial evidence, & (6) failure to give complete and proper instructions regarding testimony of William Johnson & Beatrice Brown.

Dkt. 1 at 28. Respondent correctly notes some of these propositions were previously presented to the district court and some were not. Dkt. 13 at 32. The Court first addresses the exhausted claims.

### A.    The OCCA Decision: Grounds 12(1) and 12(2)

Concerning Ground 12(1), in his Application, Collins asserted, "appellant's counsel should have raised the prosecutor knowingly used false evidence to obtain his conviction." Dkt. 13-4 at 17. Collins provided the district court with a sworn statement from Johnson wherein he states, "the Tulsa police threatened me and made me lie on Larry Collins." *Id.* at 19. The district court

---

[8] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

concluded Collins failed to show his appellate counsel was ineffective. Dkt. 13-6 at 11. Collins

re-urged this position in his Petition in Error. Dkt. 13-7 at 37-38. The OCCA considered the claim

and held:

> Petitioner has not shown the District Court abused its discretion. In the first
> instance, as the District Court noted, Johnson's statement was not produced until
> after Petitioner's direct appeal was decided. Appellate counsel was not ineffective
> for failing to utilize information which had not yet been made available.
> Furthermore, even if this Court assumes appellate counsel could have timely
> discovered this information by exercising due diligence, Petitioner has not
> established a reasonable probability that it would have resulted in a different
> outcome at trial or appeal.
>
> Pursuant to *Logan* and *Strickland*, we find Petitioner has failed to establish that
> appellate counsel's performance was deficient or objectively unreasonable, and he
> has failed to establish any resulting prejudice. Petitioner's ineffective assistance of
> appellate counsel claims are meritless.

Dkt. 13-9 at 6.

As to Ground 12(2), Collins argued in his Application, "[a]ppellate counsel Wyndi Hobbs

was ineffective in the petitioner's trial process for not raising claim of trial judge Clifford Smith

abuse of discretion where petitioner was forced to go to trial with an attorney that clearly expressed

a conflict of interest." Dkt. 13-4 at 15. The district court denied this claim. Dkt. 13-6 at 10-11.

The OCCA affirmed the district court's adjudication of the claim. Dkt. 13-9 at 6.

**B. Analysis of Ground 12(1)**

The OCCA correctly identified the *Strickland* test. *See* Dkt. 13-9 at 2-6; *see also Malicoat*

*v. Mullin*, 426 F.3d 1241, 1248 (10th Cir. 2005) (noting *Strickland* is the appropriate test to apply

to an ineffective assistance of appellate counsel claim). The OCCA then determined Collins's

claims were meritless. See Dkt. 13-9 at 6.

Thus, Collins must establish the OCCA unreasonably applied *Strickland*. *See Upchurch*,

333 F.3d at 1167. When a habeas petitioner alleges his appellate counsel rendered ineffective

assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). The Tenth Circuit has consistently held "[w]hile counsel should not omit 'plainly meritorious' claims, counsel need not raise meritless issues." *Smith v. Workman*, 550 F.3d 1258, 1268 (10th Cir. 2008) (citation omitted). To prevail, a petitioner must "show an 'objectively unreasonable' decision by the appellate counsel as well as a 'reasonable probability that the omitted claim would have resulted in relief.'" *Id.* (citation omitted).

Collins appears to allege all of Johnson's testimony was fabricated. *See, e.g.,* Dkt. 13-4 at 17 ("The evidence show[s] the statements and testimony of William Johnson to be unreliable."). However, Collins does not identify any specific testimony from Johnson he deems unreliable. *See id.*; *see also* Dkts. 1 and 7. Respondent expends considerable time evaluating whether Johnson's testimony, particularly the timeline he provided the jury, constitutes "false testimony." Dkt. 13 at 34-40.

Regardless of the basis of Collins's claim, it is meritless. "A conviction obtained by the introduction of perjured testimony violates due process if (1) the prosecution knowingly solicited the perjured testimony or (2) the prosecution failed to correct testimony it knew was perjured." *United States v. Vaziri*, 164 F.3d 556, 564 (10th Cir. 1999). First, to the extent Collins takes issue with Johnson's timeline, the prosecution did not elicit this testimony on direct examination. *See* Dkt. 12-7 at 63-80. Instead, defense counsel raised the topic on cross-examination. *Id.* at 84-88. Therefore, to the extent Collins's claim is premised upon Johnson's timing of events the evening of the shooting, the testimony does not constitute false testimony because the prosecution did not solicit the testimony, and any potential inaccuracies were exploited and corrected on cross-examination. *See id.* at 86-91. The jury was also informed of Johnson's criminal record, including

pending charges at the time of trial. *See id.* at 64-65, 80-83. Therefore, "the jury was properly apprised of the possibility of false testimony, and at that point it was for the jury to settle any related questions of credibility." *Vaziri*, 164 F.3d at 564.

Concerning Johnson's sworn statement, it was not signed until May 19, 2021, and was not notarized until June 8, 2021. Dkt. 13-4 at 19-20. Collins does not allege this information was somehow available to his appellate counsel prior to the direct appeal being adjudicated. *See* Dkts. 1 and 7. Thus, Collins's appellate counsel's "decision" to not raise this issue was not objectively unreasonable. *Smith*, 550 F. 3d at 1268.

Finally, there was ample evidence of Collins's guilt apart from Johnson's testimony. Surveillance footage placed Collins near the scene of the crime close in time to the shooting. Dkt. 12-7 at 27-28, 176-77, 202-03, 215). Collins later evaded a police traffic stop (Dkt. 12-7 at 30-31) and ammunition recovered from his vehicle matched casings found near Smith's body. Dkt. 12-6 at 185-86. Ammunition found in Brown's apartment also matched casings found near Smith's body. Dkt. 12-7 at 178. Finally, Collins's conversations while detained insinuated a weapon of his was not in a "safe" location. *See* Dkt. 12-6 at 233, 235.

Ultimately, Collins cannot demonstrate a reasonable probability that the OCCA would have granted relief had this claim been presented. Therefore, the OCCA's decision concerning Ground 12(1) was not an unreasonable application of *Strickland* nor was it an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

### C. Analysis of Ground 12(2)

The Sixth Amendment does not guarantee "a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Further, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Untied States v.*

*Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).  Substitution of counsel is not warranted unless the defendant shows "good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Padilla,* 819 F.2d 952, 955 (10th Cir. 1987) (§ 2255 action) (quoting *McKee v. Harris,* 649 F.2d 927, 931 (2nd Cir.1981)).  "A mere 'disagreement about trial strategy does not require substitution of counsel.'" *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002) (citing *United States v. Taylor,* 128 F.3d 1105, 1110 (7th Cir.1997)).

The record reveals Collins filed a pre-trial motion to "discharge" his counsel.  Dkt. 12-10 at 148-52.  A hearing was held off the record, and the district court concluded the dispute between Collins and his attorney was "simply a personal satisfaction issue[.]"  Dkt. 12-3 at 3.  The trial court noted, "Collins is generally unhappy with his representation, but raised no issue that would give this Court any concern that Mr. Boheim isn't doing a zealous job of representing his interest in this court."  *Id.*  The trial court declined to appoint new counsel.  *Id.*  The record does not reveal any other instance of Collins voicing any concern or dissatisfaction with his counsel.

Based upon the record, Collins's request for substitution of counsel was based solely on a "disagreement about trial strategy."  *Lott*, 310 F.3d at 1249.  Collins did not establish good cause warranting substitution of counsel.  Thus, Collins's conflict of interest claim is meritless and Collins "was not prejudiced by [appellate counsel's] failure to argue the point[.]"  *United States v. Babcock*, 40 F.4th 1172, 1177 (10th Cir. 2022).  Because the OCCA's rejection of Collins's Ground 12(2) was not an unreasonable application of established federal law or an unreasonable determination of the facts, the Court denies habeas relief as to Grounds 12(1) and 12(2).

## VII.     Defaulted Claims:  Grounds 6 through 11 and Grounds 12(3) through 12(6)

For Grounds 6 through 11, Collins alleges the following:

6. The prosecutor knowingly elicited perjured testimony from the state's key witness William Johnson. Mr. Collins' conviction is in violation of the 14th Amendment because it is founded upon perjured testimony of William Johnson.

7. Mr. Collins was denied his 6th Amend. right to confront the medical examiner, Dr. Arboe who conducted the autopsy in violation of the Sixth Amendment.

8. The trial court's failure to inquire to a conflict of interest denied Mr. Collins his Sixth Amendment right to conflict free counsel.

9. The state's introduction of other crimes evidence regarding the traffic stop denied Mr. Collins due process of law.

10. The trial court's failure to completely instruct the jury on the law regarding circumstantial evidence denied Mr. Collins' due process of law and a fair trial.

11. Mr. Collins was denied due process of law when the trial court failed to pass a cautionary instruction to the jury on Beatrice Brown's testimony and failed to give OUJI CR-9-43 instruction on testimony of William Johnson.

Dkt. 1 at 18-27. These claims, along with Grounds 12(3)-12(6),[9] were presented to the OCCA for

the first time in Collins's Petition in Error. *Compare* Dkt. 13-4 *with* Dkt. 13-7 at 22-35, 37-41. As

a result, the OCCA held:

> . . . Petitioner also raises for the first time on appeal a number of propositions alleging various errors not raised in his post-conviction application. This Court will not consider new allegations that have not first been presented to the District Court for resolution. *See* Rule 5.2(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2002) ("The appeal to this Court under the Post-Conviction Procedure Act constitutes an appeal from the issues raised, the record, and findings of fact and conclusions of law made in the District Court in non-capital cases."). Accordingly, consideration of these issues by this Court is waived. *Brown v. State*, 1997 OK CR 1, ¶ 36, 933 P.2d 316, 325 (where post-conviction applicant fails to first present an issue to the district court, "he has waived it for consideration in this

---

[9] "Ineffective assistance of appellate counsel for not raising the following arguments/issues on direct appeal: . . . (3) violation of confrontation clause for not being able to cross examine medical examiner Dr. Arboe, (4) allowing evidence of other crimes, (5) failure to properly instruct the jury on circumstantial evidence, & (6) failure to give complete and proper instructions regarding testimony of William Johnson & Beatrice Brown." Dkt. 1 at 28.

Court" as an "appeal from denial of a Motion for Post-Conviction Relief is not, among other things, an opportunity to raise novel issues.").

Dkt. 13-9 at 7.

### A. Adequacy of State Procedure

Collins does take issue with the OCCA's review of his claims. *See, e.g.,* Dkt. 7 at 4 ("Oklahoma's appellate and post-conviction procedure deny due process of law[.]"). However, he does not provide specific allegations as to the inadequacy of the state procedure. *Hooks*, 184 F.3d at 1217; *see also* Dkt. 7. Instead, he merely disagrees with the OCCA's adjudication of his claims. *See id.*

Nevertheless, the Tenth Circuit has previously affirmed a district court's finding that Rule 5.2(A) is an independent and adequate state ground. *See Brown v. Allbaugh*, 678 F. App'x 638, 642 (10th Cir. 2017) (Petitioner "gives us no reason to doubt the district court's conclusion that ... a state procedural bar based on Rule 5.2(A) precludes federal habeas review."). Further, Oklahoma's waiver rule, as outlined by Rule 5.2(A), is based solely on state law, and Collins provides no argument suggesting it is not regularly followed and evenhandedly applied. *See Cole*, 755 F.3d at 1159. Therefore, Grounds 6 through 11 and Grounds 12(3) through 12(6) are procedurally defaulted.

### B. Cause and Prejudice

Because each of these claims were defaulted in state court on independent and adequate state procedural grounds, the Court's review of these claims is foreclosed unless Collins can "demonstrate cause and prejudice or a fundamental miscarriage of justice." *McCracken*, 268 F.3d at 976 (internal quotations omitted). The cause standard requires a petitioner to "show that some objective factor external to the defense impeded ... efforts to comply with the state procedural rules." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Concerning Grounds 6 through 11, in

response to the prompt, "[i]f you did not raise this issue in your direct appeal, explain why[,]" Collins answered, "[t]his issue was raised in post-conviction proceedings." Dkt. 1 at 18; *see also id.* at 20, 22, 23, 26, 27. Collins does not demonstrate the requisite cause to have this Court review Grounds 6 through 11. *Grant v. Royal*, 886 F.3d 874, 892 (10th Cir. 2018).

Concerning Grounds 12(3) through 12(6), "[c]laims of ineffective assistance of appellate counsel may be raised for the first time on post-conviction as it is usually a petitioner's first opportunity to allege and argue the issue." *Routt v. Pettit,* Case No. 21-CV-014-CVE, 2024 WL 150440, at *10 (N.D. Okla. Jan. 12, 2024) (unpublished). Collins does not account for his failure to raise these Grounds in his Application. *See* Dkt. 1 at 29. Instead, Collins indicates these grounds were raised in his Application. *See id.* Thus, Collins does not demonstrate the requisite cause to have this Court review Grounds 12(3) through 12(6). *Royal*, 886 F.3d at 892.

### C. Fundamental Miscarriage of Justice

Collins's only other means of gaining federal habeas review of his defaulted claims is the fundamental miscarriage of justice exception. *Herrera v. Collins*, 506 U.S. 390, 403-404 (1993); *Sawyer v. Whitley*, 505 U.S. 333, 339-341 (1992); *see also Schlup v. Delo*, 513 U.S. 298 (1995). To "demonstrate that a fundamental miscarriage of justice would occur if his claim is procedurally barred[,] . . . a criminal defendant must make a colorable showing of factual innocence." *Beavers v. Saffle*, 216 F.3d at 918, 923 (10th Cir. 2000). Collins's Petition does not include any allegations which demonstrate a fundamental miscarriage of justice. *See* Dkts. 1 and 7. Therefore, Grounds 6 through 11 and Grounds 12(3) through 12(6) are defaulted, and habeas relief as to these claims is denied.

## VIII.     Ground 13:  State Court's Failure to Provide an Evidentiary Hearing

For his final claim, Collins alleges, "the state court's failure to conduct an evidentiary hearing denied Mr. Collins due process and a fair opportunity to present his claims."  Dkt. 1 at 30. This claim is not cognizable because it alleges a constitutional defect in his state post-conviction proceedings.  *See Sellers v. Ward*, 135 F.3d 1333, 1335 (10th Cir. 1998) ("[B]ecause the constitutional error [petitioner] raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim."); *see also Lopez v. Trani*, 628 F.3d 1228, 1229 (10th Cir. 2010) ("Our precedent makes clear that the district court did not err in dismissing claims that related only alleged errors in the post-conviction proceedings.").  Therefore, habeas relief as to Ground 13 is denied.

### CONCLUSION

The Court finds and concludes that Collins has not made the necessary showings to obtain federal habeas relief under 28 U.S.C. § 2254.  The Court therefore denies the Petition as to all thirteen (13) claims raised therein.  The Court further concludes that no certificate of appealability shall issue because reasonable jurists would not debate the correctness of this Court's assessment of Collins's constitutional claims or its determination that some claims, in whole or in part, are procedurally barred.  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

IT IS THEREFORE ORDERED that the Petition [Dkt. 1] is DENIED; a certificate of appealability is DENIED; and a separate judgment shall be entered in this matter.

IT IS FURTHER ORDERED that the Clerk of Court shall note on the record the substitution of Christe Quick, Warden, in place of Carrie Bridges as party Respondent.

**DATED** this 11th day of September, 2025.

GREGORY C. FRIZZELL
UNITED STATES DISTRICT JUDGE